Raymond N. Haynes
27475 Ynez Road #707
Temecula, Ca. 92591
916-709-9781
ray-haynes@hotmail.com
State Bar No. 93852

Attorney for Plaintiffs, California Outdoor Equities Partners and AMG Outdoor
Advertising, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA OUTDOOR EQUITY PARTNERS, AMG OUTDOOR ADVERTISING, INC**<br><br>Plaintiffs<br><br>v.<br><br>**CITY OF CORONA, a California Municipal Corporation**<br><br>DOES 1 through 100, inclusive,<br><br>Defendants | CASE NO. 2;15-civ-03172 MMM (AGRx)<br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS DECLARATION OF RAYMOND N. HAYNES, FILED CONCURRENTLY WITH PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE**<br><br>**DATE: JULY 6, 2015**<br>**TIME: 10:00 AM**<br>**COURTROOM: 780** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiffs submit the following opposition to Defendant's Motion to Dismiss, or in the alternative, stay pending resolution of related state court case.

1
2
# <u>TABLE OF CONTENTS</u>
3
4
1.  Facts         .         .         .         .         .         .         .         .         .         .         4
5
2.  PLAINTIFFS HAVE IMPORTANT FEDERAL CONSTITUTIONAL
6      RIGHTS THAT WILL NOT BE ADDRESSED IN THE STATE CASE.   .         7
7
3. CORONA HAS UNCONSTITUTIONALLY DISCRMINATED
8    AGAINST AMG BY GRANTING FREE SPEECH RIGHT IN
     VIOLATION OF ITS ORDINANCE TO LAMAR, BUT DENYING
9    THOSE SAME RIGHTS TO AMG         .         .         .         .         .         .         11
10
11
4. Conclusion         .         .         .         .         .         .         .         .         14
12
         Declaration of Raymond N. Haynes
13
         Declaration of J. Keith Stephens
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF STATUTES AND CASES

2  California Constitution Art. I, Section 2   .         .         .         .         .         .         15
3  California Business and Professions Code Section 5412         .         .         .         12

4

5  **FEDERAL CASES**

6  **Supreme Court Cases**

7

8  Forsyth County, Georgia v. Nationalist Movement, 505 U.S. 123, 131
        112 S.Ct. 2395, 2402, 120 L.Ed.2d 101 (1992) .         .         .         12
9  Central Hudson Gas and Electric v. Public Service Commission
        (1980) 447 U.S. 557 [100 S.Ct. 2343, 65 L.Ed.2d 341         .         .         4
10 Younger v. Harris 401 US 37, 91 S.Ct. 746 (1971)   .         .         .         .         5
11 Sprint Communications v. Jacobs 134 S.Ct. 584 (2013).         .         .         .         5,8,10,15
12 New Orleans Public Service, Inc. v. Council of City of New Orlean
        491 U.S. 350, 364, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) .         .         7
13 Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).         8

14 **Ninth Circuit Cases**

15

16 Valley Outdoor, Inc v. City of Riverside (9th Cir., 2005) 448 F.3d 948 .         .         4
17 Desert Outdoor Advertising v. City of Moreno Valley, 103 F.3d 814 (1996) .         12

18 **California Cases**

19 Gerawan Farming v. Lyons (2000) 24 Cal.4th 468, 491 .         .         .         .         4
20 Summit Media LLC v. City of Los Angeles (2012) 211 Cal.App.4th 921     . 5,6,11,12

21

22

23

24

25

26

27

28

**California Outdoor and AMG Opposition to Motion to Dismiss**

1

2

# 1. <u>FACTS</u>

Plaintiffs, California Outdoor Equities Partners, LLC ("CalEquity") and AMG Outdoor Advertising, Inc. ("AMG) have filed a complaint seeking a temporary restraining order and preliminary injunction to prevent Defendant from enforcing its ban on billboards within the city limits in the City of Corona.  Plaintiff CalEquity has an option to purchase signs within the city and Plaintiff AMG has acquired leases to aid in that relocation, and together CalEquity and AMG intend to build signs within the City limits.  It is important to note that, even though AMG has built one sign, that is not subject to the joint venture arrangement for the construction of signs, CalEquities and AMG have not built the signs (as Defendant City claims), and are seeking to build and/or relocate other signs within the City.  CalEquity has built NO signs within the city, and is challenging the city's ban on outdoor advertising displays apart from the claim of the City against AMG.  AMG has a joint venture agreement with CalEquities for the other signs to be sure, but those signs are separate and apart from the one sign subject to the state claim.  It is important to note that AMG and CalEquity are two separate and distinct entities with no common ownership, management, or employees.  They simply joint venture on billboard development.

To this point, Defendant City has actively prevented AMG and CalEquity from building those signs by: (1) illegally failing to accept AMG's application for permits to construct the sign, and therefore illegally interfered with its ability to obtain the necessary permits to build the sign (<u>Valley Outdoor, Inc v. City of Riverside</u> (9th Cir., 2005) 448 F.3d 948), violating CalEquity and AMG's first amendment rights for free expression; (2) failing to grant to Plaintiffs the right to

relocate signs under the ordinance in effect in the City, which give the City the right to reject Plaintiffs' request for the right to relocate signs in its "sole and absolute discretion," while at the same time granting to other parties the ability to build billboards in violation of its so-called "absolute ban" on signs within the city limits. The city's ban on billboards is a general ban which does not advance a substantial government interest, and does not advance any alleged government interest in the least restrictive manner (Gerawan Farming v. Lyons (2000) 24 Cal.4th 468, 491, Central Hudson Gas and Electric v. Public Service Commission (1980) 447 U.S. 557 [100 S.Ct. 2343, 65 L.Ed.2d 341]; and (3) Defendant has illegally discriminated against Plaintiffs' free speech rights, denying them their right of equal protection under First Amendment to the US Constitution and Article I, Section 7 of the California Constitution, by applying its ban against billboards to Plaintiffs while at the same time allowing other parties to violate the ordinance, and, in fact, entering into agreements with those parties allowing the construction of billboards in direct violation of its ordinance under the guise of an alleged "relocation agreement" (see Summit Media LLC v. City of Los Angeles (2012) 211 Cal.App.4th 921), and receiving payment from those parties for the right to operate the billboards, giving the City a financial stake in the operation and profitability of those signs. For these reasons, Plaintiffs contend the ordinance at issue in this action is unconstitutional as an infringement on Plaintiffs' free speech rights and Defendant is denying Plaintiffs' equal protection rights

In its motion, the City requests this court abstain from involving itself in the dispute because of a pending civil case in state court between AMG and the City. While the City spends an extensive amount of space in its opposition citing the Younger v. Harris [401 US 37, 91 S.Ct. 746 (1971)], the City misconstrues the recent Supreme Court decision of Sprint Communications v. Jacobs 134 S.Ct. 584

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(2013).  In that decision, the Supreme Court severely limited the <u>Younger</u> abstention doctrine, and the factors for its application.  In fact, the court held that <u>Younger</u> should only be applied to cases in which the state's interest was a pending criminal action or specific cil actions that do not apply here.  In fact, the court should only abstain in "extraordinary" circumstances, which do not exist in this action (134 S.Ct. at p. 192).[1]  In addition to that principle, the fact is:

(1) CalEquity has not violated the city's ordinance, and is seeking to enforce its first amendment rights against discrimination.  CalEquities inclusion in that action was completely uncalled for, and, in fact, borders on a malicious prosecution or abuse of process.  CalEquity has not built a billboard in the city, nor has it threatened to do so.  The complaint alleges exactly the opposite, and seeks to use the fact that CalEquity has a joint venture agreement with AMG to seek to obtain relocation agreements as a basis for tying CalEquity with AMG's lawsuit.  There is no basis for a "enforcement" proceeding against CalEquity because CalEquity has violated no law.  It is simply seeking to enforce its constitutional rights to build a billboard.

(2) As is clear from the cross complaint, CalEquity's rights are not at all at issue in the state court action.  No cross complaint has been filed by CalEquity, no claims have been made by CalEquity, and since no sign was built by CalEquity, it is not subject to any enforcement action by the City.  CalEquity joined with AMG because it has a joint venture agreement with AMG on the two sites for which AMG has a lease agreement.  The issue in this case is whether the City's application of its relocation laws passes federal constitutional muster.

(3) While it is true that the City has approved relocation agreements, its ordinance allows it to exercise that power in its "sole and absolute discretion."  It has used that power

---

[1] In its opinion denying the request of Plaintiffs for a temporary restraining order, the court understandably spent a considerable amount of that opinion addressing the abstention issue, yet did not address the principles on abstention in the <u>Sprint Communications v. Jacobs</u> case.  The court appeared to believe, due to the City's misrepresentations, that CalEquity had in fact built a sign, and was subject to the enforcement proceeding.

**California Outdoor and AMG Opposition to Motion to Dismiss**

in a manner completely prohibited by California state law, as enunciated in Summit Media LLC v. City of Los Angeles (2012) 211 Cal.App.4th 921.  California state law, while it allows relocation agreements, does not allow those agreements to violate the local laws of the city, and in such cases as it is granted, state law requires that it be done to "continue development in a planned manner."  Nowhere in its evidence does the city show where the signs allegedly relocated where removed to "continue development in a planned manner."  In fact, as the declaration of Joanne Colletta shows, only one sign in Lamar's case was actually relocated according to development needs, yet Lamar was given 10 signs to build according to relocation agreements.  It is Plaintiff's contention that the relocation agreements with Lamar are shams, completely unrelated to any development needs of the City, with the sole purpose of evading the ban, and granting to Lamar a market advantage in the City.

By including CalEquity in the state lawsuit, despite the fact that it has committed no act requiring an "enforcement" proceeding, the City is trying to cut off its pursuit of its first amendment rights in the federal court.  The fact that it is joint venturing with AMG doesn't change its essential federal claims, and the fact that they are not involved, at all, in the state case.  Where such rights are so clearly implicated, the Supreme Court has held that a federal court ought to intervene New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).

**California Outdoor and AMG Opposition to Motion to Dismiss**

# 2. __PLAINTIFFS HAVE IMPORTANT FEDERAL CONSTITUTIONAL RIGHTS THAT WILL NOT BE ADDRESSED IN THE STATE CASE__

In <u>New Orleans Public Service, Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 364, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("NOPSI"), the Supreme Court held, at 491 US at pp. 358-59:

> Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred. For example: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." Cohens v. Virginia, 6 Wheat. 264, 404 (1821). " `[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction.' " Chicot County v. Sherwood, 148 U. S. 529, 534 (1893) (citations omitted). "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." Willcox v. Consolidated Gas Co., 212 U. S. 19, 40 (1909) (citations omitted). Underlying these assertions is the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds. Kline v. Burke Construction Co., 260 U. S. 226, 234 (1922).

The question in this matter is (1) whether there is an important federal question involved; and whether (2) the matter fits into one of the narrow exceptions defined in NOPSI, as further defined in <u>Sprint Communications v. Jacobs</u> 571 US __, 134 S.Ct. 584 (2013). The fact is abstention is "the exception, not the rule." (<u>NOPSI</u>, 491 US at. p. 359). This action is an action to enforce land use laws in Corona, not any state law. Advertising

is, by itself, not a noxious use.  It is not a public nuisance.  The alleged nuisance only occurs because of the billboard ban, which implicates important constitutional free speech rights.

It is important to note that the "state," nor any state law, is involved in the litigation in the state court.  The entire action involves violation of local land use laws, laws that have serious first amendment considerations.  Federal issues predominate, and no state laws are involved.

Counsel for the City attempts to fit this action within the provisions of Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).  The Huffman case involved a state law against obscenity, not a local land use law.  The court held that "the action involved the "state as a party" and "the proceeding was 'in aid of and closely related to [the State's] criminal statutes.'"  For that reason, Younger abstention was appropriate (134 S.Ct. at p. 591).

As the Supreme Court noted in Sprint, 134 S.Ct. at p. 588:

> Circumstances fitting within the Younger doctrine, we have stressed, are "exceptional"; they include, as catalogued in NOPSI, "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id., at 367-368, 109 S.Ct. 2506. Because this case presents none of the circumstances the Court has ranked as "exceptional," the general rule governs: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."

Since the general rule is that a pending action in a state court is no bar to proceedings concerning the same matter in federal court, the City has the burden to show that the action fits into one of the exceptions.  In this matter it cannot, for several reasons:

(1)  There is absolutely no basis for an enforcement action against CalEquity, which has not violated any city law, nor even threatened to violate those laws.  AMG has entered into a joint venture agreement with CalEquity for the two leases mentioned in the motion,

**California Outdoor and AMG Opposition to Motion to Dismiss**

Page 9

and has a civil action pending against it, but it has claims that are entirely separate from the claims in the state action, in addition to those in the state action.

(2)  The lawsuit in state court does not involve state laws or enforcement of state laws.  The state is not a party to the lawsuit, nor is there any important state interest.  The entire action involves enforcement of local land use laws, and the City's discriminatory application of those laws.  The City enters into sham relocation agreements, gives Lamar preference in the exercise of free speech, and then tries to clothe its blatant violation of the first amendment as being somehow protected by state law allowing relocation agreements.  California courts have held that such agreements must comply with local law, and the first amendment says that such laws cannot be applied "in the sole and absolute discretion" of the local government.   The discriminatory treatment of Plaintiffs by the City are not allowed by First Amendment, and cannot be glossed over by sham agreements that have nothing to do with development.

(3)  There is no criminal proceeding involved in this action, nor is the City's action in any way close to a criminal proceeding.  In order for a criminal proceeding to be filed, and crime must have been committed, and CalEquity has committed no crime.  Before an enforcement proceeding in the nature of the <u>Huffman</u> case, some violation of some law has to have occurred.  Nothing of the sort has occurred here.  The fact that the City has tried to shoehorn CalEquity into the case is unavailing.  The City has to show that CalEquity has violated its laws in order to fit into the <u>Huffman</u> exception.

> Divorced from their quasi-criminal context, the three Middlesex conditions would extend Younger to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. See Tr. of Oral Arg. 35-36. That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the "exception, not the rule." <u>Hawaii Housing Authority v. Midkiff</u>, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (quoting <u>Colorado River</u>, 424 U.S., at 813, 96 S.Ct. 1236). In short, to guide other federal courts, we today clarify and affirm that

Younger extends to the three "exceptional circumstances" identified in NOPSI, but no further. (Sprint v. Jacobs, supra. 134 S.Ct. at pp. 593-94)

For these reasons, Plaintiffs respectfully request the City's motion to dismiss be denied.

## 3. CORONA HAS UNCONSTITUTIONALLY DISCRMINATED AGAINST AMG BY GRANTING FREE SPEECH RIGHTS IN VIOLATION OF ITS ORDINANCE TO LAMAR, BUT DENYING THOSE SAME RIGHTS TO AMG AND CALEQUITY

The agreement between the City and Lamar, under the guise of a relocation of one condemned sign, allows Lamar to build several signs in violation of the city ordinances. These agreements, as shown by the declaration of Joanne Colletta, are sham agreements. There are 10 signs at issue, yet she gives reasons for "relocation agreements" for only two, and one of those was a "change of use" from a static to an electronic board. Agreements of that sort are illegal, and discriminates against Plaintiffs in the exercise of their constitutional rights (Summit Media LLC v. City of Los Angeles (2012) 211 Cal.App.4th 921).

In the Summit Media case, the court invalidated a settlement agreement very similar to the case at bar on the grounds that it was an ultra vires act, saying at p. 934:

The trial court concluded that the settlement agreement allowed the city and real parties to circumvent the general ban in the municipal code on alterations to existing offsite signs. (See LAMC, former § 14.4.4(B)11, § 12.21(A)7(l).) And, because land use regulations involve the exercise of police power, and "the government may not contract away its right to exercise the police power in the future" (Avco Community Developers, Inc. v. South Coast Regional Com. (1976) 17 Cal.3d 785, 800 [132 Cal. Rptr. 386, 553 P.2d 546] [**28] (Avco)), the city's agreement to do so was ultra vires. The trial court was correct.

In this action, the agreement was a lawsuit settlement, involving signs other than the one the City wanted to condemn, and the agreement clearly violated the City's ordinance.  Moreover, based on that agreement, the City began allowing one person to violate the ordinance at the expense of all others.  As stated above, the city cannot discriminate against speakers, especially when those speakers occupy the exact same position, and the relocation agreement does not justify the discrimination Metromedia, 32 Cal.App.3d at p. 187, Summit Media, 211 Cal.App.4[th] at p. 934).  As described in the Summit Media case, at p. 936, the ordinance at issue there:

> The 2002 sign ban expressly prohibited offsite signs, and stated: "This [prohibition] shall also apply to alterations or enlargements of legally existing off-site signs." (L.A. Ord. No. 174547, § 2.11.) We do not see how the language could be plainer, or how the prohibition could conceivably be construed to exclude from its scope an alteration consisting of converting an ordinary billboard to one with a digital display.

The Corona ban purports to be a complete ban, and the relocation agreements violate that ban with respect to the signs it allows, mainly because, even though one sign was condemned, 10 signs were approved.  To the extent that the agreements allow the other signs, they are sham agreements, not real relocation agreements.  The declaration of Joanne Colletta reinforces that conclusion.    The agreements

themselves identify 8 to 10 signs, the declaration of Jim Elmore filed in support of the motion for the preliminary injunction shows 10 signs have been built.  When only one sign is identified as being built to "pursue" development, it is difficult to see how the City can claim that it fits within the provisions of Business and Professions Code §5412, which states:

> It is a policy of this state to encourage local entities and display owners to enter into relocation agreements which allow local entities to continue development in a planned manner without expenditure of public funds while allowing the continued maintenance of private investment and a medium of public communication.

The City's ordinance allows the City to grant such agreements in its "sole and absolute" discretion, though the ordinance does require the agreements to be "consistent" with the Business and Professions Code. A grant to the City of unfettered discretion to determine who can and cannot obtain a permit to build a billboard in the City limits poses a substantial risk to freedom of speech whenever an application is made to the City for a permit to build.  As the Supreme Court said in Forsyth County v. Nationalist Movement (1992) 505 U.S. 123, at pp. 129-30:

> the Court has permitted a party to challenge an ordinance under the overbreadth doctrine in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker, see *Thornhill* v. *Ala-130*130 *bama,* 310 U. S. 88, 97 (1940); *Freedman* v. *Maryland,* 380 U. S. 51, 56 (1965); *Taxpayers for Vincent,* 466 U. S., at 798, n. 15, and in cases where the ordinance sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected, see *Broadrick* v. *Oklahoma,* 413 U. S. 601 (1973); *Jews for Jesus,* 482 U. S., at 574-575.

---

**California Outdoor and AMG Opposition to Motion to Dismiss**

Page 13

Applying these same principles to billboards, the 9th Circuit, in <u>Desert Outdoor Advertising v. City of Moreno Valley</u>, supra., said, at 103 F.3d pp. 818-19:

> A person must obtain a permit before erecting an off-site structure or sign. Although the issuance of a permit by City officials is subject to some objective criteria relating to locational and structural standards, City officials have discretion to deny a permit on the basis of ambiguous and subjective reasons. For example, the ordinance states that a permit shall issue subject to findings that the structure or sign "will not have a harmful effect upon the health or welfare of the general public and will not be detrimental to the welfare of the general public and will not be detrimental to the aesthetic quality of the community or the surrounding land uses." Moreno Valley Ordinance No. 133, § 19.3.

> As the Supreme Court stated, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150-51, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). Furthermore, we have noted that "a law cannot condition the free exercise of First Amendment rights on the `unbridled discretion' of government officials." Gaudiya Vaishnava Soc'y v. City and County of San Francisco, 952 F.2d 1059, 1065 (9th Cir.1990) (citing City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 755, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988)), cert. denied, 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992).  Moreno Valley Ordinance No. 133 contains no limits on the authority of City officials to deny a permit.

This claim involves important federal First Amendment claims.  If a government entity can hide its discrimination between speakers with sham agreements it claims satisfy state laws of questionable applicability, there is no limit on a government's ability to intrude on the free speech rights of the citizens of this country.  Here, Lamar gets whatever it wants, with the City's blessings.  Its competitors are excluded from the same free speech venues in "the sole and absolute discretion" of the governing entity.  For the federal court to refuse to intervene in this action is to preclude CalEquity and AMG of their ability to have a federal court intervene to protect important federal constitutional rights.

**California Outdoor and AMG Opposition to Motion to Dismiss**

Page 14

# 4. <u>CONCLUSION</u>

This action does not fit the exceptions defined by the Supreme Court as a basis for abstention on two grounds:

(1) There is no basis for an enforcement action against CalEquity, because it has violated no city or state law;

(2) No state laws or state concerns are involved, and the state is not a party to the action. The state court action is a land use battle in which very important first amendment values are implicated, and the City has shown no other basis for fitting within the exceptions to the general rule that federal courts should exercise jurisdiction over federal issues (<u>Sprint v. Jacobs</u>, supra. 134 S.Ct. at pp. 593-94)

The discriminatory aspects of the City's behavior are important. They produced no evidence in any proceeding that any but one of the signs were appropriate for relocation. Since they have a citywide ban, it had the obligation to show that it did more than try to explain away a sweetheart deal with one or two billboard companies by putting lipstick on this offensive "relocation" pig.

For these reasons, Plaintiffs request that the motion to dismiss be denied.

Dated: June 15, 2015

By____/s/Raymond N. Haynes
Attorney for Plaintiffs

**California Outdoor and AMG Opposition to Motion to Dismiss**

# <u>DECLARATION OF RAYMOND N. HAYNES</u>

Raymond N. Haynes says:

I am the attorney for Plaintiffs in this matter.  I am making this declaration in opposition to the motion of the City of Corona to dismiss this action on abstention grounds.

I have personal knowledge of the facts stated in this declaration and I could competently testify to the following facts if called as a witness.

As of the filing of the complaint, Plaintiff CalEquity has not built a billboard within the City limits of the City of Corona.  It has not violated the laws of the City of Corona in any way, and has entered into joint venture agreements with AMG for the construction of billboards if the City of Corona grants the permits, or this court allows it to build.  For reasons completely unknown to me, the City of Corona joined CalEquity in the action it filed in state court even though there is nothing for the City to enforce against CalEquity.  CalEquity has not appeared in the action to this point, not been served with the complaint as of this time, and the only "sin" of CalEquity is to file this federal lawsuit challenging Corona's ordinances, and the manner in which they are applied.

Of course, CalEquity is not alone.  The City also filed a lawsuit against the landowners whose properties were leased by AMG, even though no billboards were built on those sites, and the landowners specifically told the City they were not going to allow the construction of billboards.  I actually participated in a telephone conversation in which I heard the landowners say they would not build a billboard on their property, and heard Mr. Higginbotham say to them that if they did not sign an agreement for a permanent injunction, he would sue them in the state court.  I filed the request for the temporary restraining order based on those outrageous actions by the City through their City Attorney.

I declare under penalty of perjury the foregoing is true and correct under the laws of the state of California.  Executed on June 14, 2015 in Temecula, California.


                                            /s/Raymond N. Haynes


# DECLARATION OF J. KEITH STEPHENS


J. Keith Stephens says:

I am the Chief Executive Officer of California Outdoor Equity Partners, LLC.  I am making this declaration in opposition to the motion of Defendant City of Corona to dismiss this case on the grounds of abstention.

As of the date of this declaration, CalEquity has not built a billboard in the City of Corona, or violated, or threatened to violate, its ordinances in any way.  It has a joint venture agreement with AMG to build two billboards on the properties leased by AMG as described in the motion for the preliminary injunction.  I obtained the rights to existing signs in the City for the purpose of relocating those signs.  I have not publically revealed from whom those rights were obtained, because every time I or AMG reveal the parties with whom we have agreements, the City sues them, even though neither CalEquity, AMG, nor those parties have violated any laws or ordinances in the City of Corona.  I negotiated to acquire those rights for the purpose of perfecting a federal claim against the City, and the City has taken every action it could to prevent me and CalEquity from asserting our legitimate federal claims.  CalEquity  and AMG will not build billboards on those sites unless the construction is allowed by city permit or court approval.

1  AMG and CalEquity are two separate and distinct entities with no common
2  ownership, management, or employees.  They simply joint venture on billboard
3  development.

4  I declare under penalty of perjury under the laws of the State of California that the
5  foregoing is true and correct.  Executed on June 14, 2015 in Los Angeles, Ca.

6

7

8                                                       /s/ J. Keith Stephens

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**California Outdoor and AMG Opposition to Motion to Dismiss**

Page 18