Raymond N. Haynes
27475 Ynez Road #707
Temecula, Ca. 92591
916-709-9781
ray-haynes@hotmail.com
State Bar No. 93852

Attorney for Plaintiffs, California Outdoor Equities Partners and AMG Outdoor Advertising, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA OUTDOOR EQUITY PARTNERS, AMG OUTDOOR ADVERTISING, INC**<br><br>Plaintiffs<br><br>v.<br><br>**CITY OF CORONA, a California Municipal Corporation**<br><br>DOES 1 through 100, inclusive,<br><br>Defendants | CASE NO. 2;15-civ-03172 MMM (AGRx)<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION AND MOTION FOR A PRELIMINARY INJUNCTION RESTRAINING DEFENDANT'S VIOLATION OF PLAINTIFFS' RIGHTS OF FREE SPEECH AND EQUAL PROTECTION, POINTS AND AUTHORITIES IN REPLY; DECLARATION OF J. KEITH STEPHENS**<br><br>**DATE: JULY 6, 2015**<br>**TIME: 10:00 AM**<br>**COURTROOM: 780** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiffs submit the following reply to Defendant's opposition to their motion for a preliminary injunction enjoining enforcement of Defendant's alleged complete ban on billboards in Defendant's City limits

---

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

1.  Facts      .      .      .      .      .      .      .      .      .      .      4

2.  ABSTENTION IS NOT WARRANTED IN THIS CASE BECAUSE
    ANY CLAIM OF THE STATE COURT ACTION AGAINST
    CALEQUITY IS PRETEXTUAL      .      .      .      .      .      9

3.  CORONA HAS UNCONSTITUTIONALLY DISCRMINATED
    AGAINST AMG BY GRANTING FREE SPEECH RIGHTS IN
    VIOLATION OF ITS ORDINANCE TO LAMAR, BUT DENYING
    THOSE SAME RIGHTS TO AMG AND CALEQUITY      .      .      .      13

4.  CORONA'S GENERAL BAN ON THE CONSTRUCTION
    OF BILLBOARDS IS UNCONSTITUTIONAL ON ITS FACE      .      .      15

5. Conclusion      .      .      .      .      .      .      .      .      .      19

        Declaration of J. Keith Stephens      .      .      .      .      .      20

# TABLE OF STATUTES AND CASES

California Business and Professions Code Section 5412 . . . 8,15,18

Corona Municipal Code Section 17.74.130 . . . . . . 7,24
17.74.160 . . . . . . 6,7,30
17.74.170(H) . . . . . . 6,8,30
17.74 . . . . . . .

**FEDERAL CASES**

**Supreme Court Cases**

Forsyth County, Georgia v. Nationalist Movement, 505 U.S. 123, 131 112 S.Ct. 2395, 2402, 120 L.Ed.2d 101 (1992) . . . . . 14
City of Lakewood v. Plain Dealer Publishing Company, 486 U.S. 750, 108 S.Ct. 2138 (1988) . . . . . . . 14
Metromedia, Inc v. City of San Diego (1981) 453 U.S. 490 . . . 8,16
Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) . . . 10
Reed v. Town of Gilbert, 576 US ___, slip opinion (2015) . . 8,14,15,16,17,20

Sprint Communications v. Jacobs 134 S.Ct. 584, 593-4 (2013). . . 8,10,12
New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350 (1989) . . . . 8,9,10

**Ninth Circuit Cases**

Vanguard Outdoor v. City of Los Angeles, 606 F.3d 898 (9th Cir., 2009) . 18,19
World Wide Rush v. City of Los Angeles, 606 F.3d 676 (9th Cir. 2010) . 18,19

**California Cases**

Metromedia, Inc. v. City of San Diego (1982) 32 Cal.3d 180 . . 17,21,25
Summit Media LLC v. City of Los Angeles (2012) 211 Cal.App.4th 921 . 7,13,16,30

# 1. <u>FACTS</u>

Defendant requests that this court simply rely on its ruling on the temporary restraining order, a ruling made without the benefit of Plaintiffs' response.  Since that ruling was not made with full information, Plaintiffs' will provide this court with the information that will aid in a decision based on full information.

In its ruling denying Plaintiff's request for a temporary restraining order[1], the court made the statement that:

> Plaintiffs have failed to adduce evidence indicating that they are likely to succeed on their equal protection claim.  Other than Alex Garcia's and Jim Elmore's statements concerning Elmore's "investigation," plaintiffs adduce no evidence substantiating the assertion that they are being treated disparately.  The relocation agreements between the City and Lamar, which plaintiffs submitted with their application, concern preexisting billboards that are being relocated; there is no evidence that additional billboards were in fact newly erected or relocated.

Plaintiffs have indeed adduced such evidence, and that evidence is before the court in the moving papers.  Plaintiffs have contended from the beginning of this litigation that the "relocation agreements" are in fact shams, intended to hide the City's deliberate attempt to violate its ordinance in favor of a competing billboard company.

---

[1] Defendant has questioned why Plaintiff's requested the temporary restraining order.  The main reason is that Defendant began adding parties into the state action (which it has claimed is an enforcement action) who had not violated, nor threatened to violate, the City's alleged ban on billboards.  The City's action was clearly designed to influence this court's ruling by attempting to persuade this court that the state action was an enforcement action, when it was not.  As such, the City's actions bordered on abuse of process, since the reason for adding the new parties was not to enforce its ordinance.

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

Reviewing both the declaration of Joanne Colletta and the relocation agreements themselves, it is clear that the relocation agreements were not made to "relocate" the signs, but rather to increase their profitability to Lamar (and hence increase the City's cut of the profits). As the supplemental declaration of Joanne Colletta dated January 21, 2015(Ex. 1 to Plaintiffs' request for judicial notice in reply to Defendant's opposition, p. 2, paragraphs e and f) and the agreement itself (pp. 12-13 of Ex. 9 to Plaintiffs' request for judicial notice in support of motion for preliminary injunction) show, at least 2 of the signs included as a part of the "relocation" agreement (with its two amendments) were not relocated at all. In fact, as the agreement and Joanne Colletta's declaration state, these signs were "relocated" at the "same location," an interesting play on words, but an attempt to hide the fact that the "relocation" agreements were nothing more than an attempt to circumvent the City's general ban on billboards. In both cases, as the declaration of J. Keith Stephens demonstrates (and the "relocation" agreement itself contemplated, see paragraph 4.3, p. 13 of Exhibit 9 to request for judicial notice in support of motion), these signs were upgraded from 300 square foot static boards to 672 square foot (14' x 48') changeable message boards. As can be seen by the ordinance 2729 (Exhibit 2 to Plaintiff's request for judicial notice filed in support of motion), the amendments to the ban on billboards was (Corona Municipal Code §§ 17.74.070(H) and 17.74.160) were adopted the same day as the original "relocation" agreement, and specifically contemplated allowing banned changeable message boards on the exact same locations as the signs originally existed.

To claim now that a billboard "relocated" at the "same location" was a legitimate relocation pursuant to the language of Business and Professions Code §5412 is to stand the plain language and meaning of that statute on its head. As the agreements show, in paragraph 4.3.1, the agreement with Lamar was not for any

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

Page 5

noble "protection of private business or planned development," it was a banal attempt by the City to participate in Lamar's profits.  The two billboards that were "located" at the "same location" were at a property in which no new development occurred at all.

The "relocation" at the "same location", where there was no development, is the most obvious evidence of the City's motivation.  The fact that no "development" need or city benefit (other than the participation in Lamar profits) was identified in the agreement (other than the one sign in the line of the freeway) is additional evidence that the City was trying to violate its ordinance to benefit a competitor of CalEquity and AMG.[2]  This is the evidence of the discrimination.  The City has the burden to prove that its relocation agreements are not just window dressing to hide discrimination.  It has failed completely to do that, and in fact, the clear words of the agreement, and the declaration of Joanne Colletta demonstrate that, while the agreements were clever lawyering, they were simply an effort to hide the fact that the City was giving Lamar an advantage within the City pursuant to an agreement that state courts have held illegal under <u>Summit Media LLC v. City of Los Angeles</u> (2012) 211 Cal.App.4th 921, 934.

The City also engaged in a similar act of legal legerdemain when it, in opposition to the ex parte request for a temporary restraining order, made the outrageous claim that the action against CalEquity in state court was an enforcement action.  CalEquity has not built a billboard, at all, in the City.  In fact, CalEquity acquired rights to relocate billboards, which the City denied "in its sole and absolute

---

[2] It is understandable that the court did not address this specific issue, since the City inexplicably failed to attach supplemental declaration of Joanne Colletta to its opposition to the ex parte motion or failed to provide any explanation as to why any of the signs were relocated.  It appears that the City's defense is "there are relocation agreements, and that is our complete answer to the 'nondiscrimination' claim.

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

discretion." J. Keith Stephens has been an active participant in the billboard industry of Southern California for over thirty years, both as the owner of billboard companies (Valley Outdoor Advertising, Inc., LA Outdoor Advertising, Inc, and Virtual Media Group, Inc.) as well as an employee for other companies (Regency Outdoor Advertising, Inc. and Desert Outdoor Advertising, Inc.)  He has also acted as a consultant to several companies, including Kunz Outdoor, Adams Outdoor, and AMG Outdoor, and, during that time has successfully challenged ordinances in the Cities of Riverside, Corona, Oceanside, and Los Angeles, as well as the Counties of Riverside and Orange.  That has made him an unwelcome participant in a lot of different cities and counties from time to time, and as an aggressive competitor, disliked by billboard companies with whom he has fought for market share. CalEquity is his latest venture into that market.  It is not a new entrant, but rather a different business entity for a participant with a long history in the billboard market. CalEquity's sole interest is in promoting fair market rental rates for landowners and competitive leasing rates for advertisers, as well as its free speech rights.

It is not appropriately the subject of an enforcement action, and the City does not contend that it is.  Merely sticking a company or a person's name on a lawsuit does not make the lawsuit a valid exercise of the police power.   Neither the landowners, nor CalEquity, have violated the City's ordinances.  Their only sin was to challenge that ordinance in federal court.  The City's only evidence in support of its motion to dismiss against CalEquity (and AMG on the two sites not involved in the original state filing) was that a "lawsuit" was pending in state court.  There is no evidence before this court that the lawsuit has any merit.[3]  Defendant has contended

---

[3] Once again, Defendant misled this court in its opposition to the temporary restraining order, so it is no surprise that the court ruled as it did in the order denying the request.  Defendant's only contention was that CalEquity was named in the suit (after the federal claim was filed), not that CalEquity has violated the City's ordinances.  It produced no evidence to the court in opposition to the TRO request that any violations had occurred,

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

Page 7

1  that AMG has threatened to build other billboards, but it has not.  It merely said in
2  its original settlement discussions with the City that if the City chose not to settle,
3  the fight would "not be over one billboard."  It clearly is not, it is over at least two
4  billboards and the fight for those billboards is being fought in federal court, where
5  the plaintiffs have a clear federal free speech and equal protection rights to pursue
6  those federal claims.  Since they have not built a billboard on those sites, no alleged
7  enforcement action would be appropriate, and, if no civil enforcement action is
8  appropriate, the court could not even get to the <u>Younger</u> factors in this motion (as it
9  did in the TRO decision), because the Plaintiffs' preeminent right to a federal hearing
10  on its federal claims supercedes and claim for abstention (<u>Sprint Communications v.</u>
11  <u>Jacobs</u> 134 S.Ct. 584, 593-4 (2013), <u>New Orleans Public Service, Inc. v. Council of City</u>
12  <u>of New Orleans</u>, 491 U.S. 350, 364).

13        Finally, the Supreme Court has recently reiterated its strongly held opinion that City
14  sign ordinances have to survive a strict scrutiny test.  In this action, as the declaration of J.
15  Keith Stephens demonstrates, the billboards on the properties on which a sign will be built
16  will contain noncommercial messages.  In essence, the city's ban on billboards fall right
17  into the problem the courts have mentioned in the <u>Metromedia</u> (<u>Metromedia, Inc. v. City</u>
18  <u>of San Diego</u>, 453 U.S. 490, 511-14 (1981), <u>Metromedia, Inc. v. City of San Diego</u> (1982)
19  32 Cal.3d 180) cases, that is, they grant special provision for on-site commercial messages
20  and ban off-site noncommercial messages.  This is the exact kind of discrimination the
21  court literally recently ruled is improper (<u>Reed v. Town of Gilbert</u>, slip opinion, pp. 12-13,
22  576 US __, <u>http://www.supremecourt.gov/opinions/14pdf/13-502_9olb.pdf</u>, issued June
23  18, 2015 (2015)).  The ban is facially discriminatory based on content, by allowing on-site
24  commercial and banning off-site noncommercial messages, as well as discriminatory

25

26  _____

and there is no evidence before the court that the naming of CalEquity in the state court action was anything other
27  than a pretext for asserting the abstention claim.

28  **California Outdoor and AMG Reply to Opposition to Motion for Injunction**

Page 8

against speakers on two bases, that is, on-site commercial speakers get broader speech rights than off-site noncommercial speakers and the City has given broader rights to Lamar under sham "relocation agreements" than other billboard speakers.  For these reasons, Plaintiffs request that enforcement of the ban be enjoined pending the trial on the action.

## 2. ABSTENTION IS NOT WARRANTED IN THIS CASE BECAUSE ANY CLAIM OF THE STATE COURT ACTION AGAINST CALEQUITY IS PRETEXTUAL

This point was briefed in more detail in the opposition to the motion but since this court mentioned it has a basis for Plaintiffs' failure to show that they would prevail on the merits, this reply addresses the question as well.

New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 364, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("NOPSI"), held that the right of a Plaintiff to receive a hearing in federal court on a federal claim is preeminent, at 491 US at pp. 358-59:

> "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." Cohens v. Virginia, 6 Wheat. 264, 404 (1821). " `[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction.' " Chicot County v. Sherwood, 148 U. S. 529, 534 (1893) (citations omitted). "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." Willcox v. Consolidated Gas Co., 212 U. S. 19, 40 (1909) (citations omitted). Underlying these assertions is the undisputed constitutional principle that Congress, and not the Judiciary,

defines the scope of federal jurisdiction within the constitutionally permissible bounds. Kline v. Burke Construction Co., 260 U. S. 226, 234 (1922).

The question in this matter is (1) whether there is an important federal question involved; and whether (2) the matter fits into one of the narrow exceptions defined in NOPSI, as further defined in Sprint Communications v. Jacobs 571 US __, 134 S.Ct. 584 (2013). Abstention is "the exception, not the rule." (NOPSI, 491 US at. p. 359). The matter before the state court below is an action to enforce land use laws in Corona, not any state law. Advertising is, by itself, not a noxious use. It is not a public nuisance. The alleged nuisance only occurs because of the billboard ban, which implicates important constitutional free speech rights.

It is important to note that neither the "state," nor any state law, is involved in the litigation in the state court. The entire action involves violation of local land use laws, laws that have serious first amendment considerations. Federal issues predominate, and no state laws are involved.

Counsel for the City attempts to fit this action within the provisions of Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The Huffman case involved a state law against obscenity, not a local land use law. The court held that "the action involved the "state as a party" and "the proceeding was 'in aid of and closely related to [the State's] criminal statutes.'" For that reason, Younger abstention was appropriate (134 S.Ct. at p. 591).

As the Supreme Court noted in Sprint, 134 S.Ct. at p. 588:

Circumstances fitting within the Younger doctrine, we have stressed, are "exceptional"; they include, as catalogued in NOPSI, "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id., at 367-368, 109 S.Ct. 2506. Because this case presents none of the circumstances the Court has ranked as "exceptional," the general rule governs: "[T]he pendency of an action in [a]

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

1   state court is no bar to proceedings concerning the same matter in the Federal
2   court having jurisdiction."

3   Since the general rule is that a pending action in a state court is no bar to proceedings
4   concerning the same matter in federal court, the City has the burden to show that the action
5   fits into one of the exceptions.  In this matter it cannot, for several reasons:

6   (1)  There is absolutely no basis for an enforcement action against CalEquity, which
7   has not violated any city law, nor even threatened to violate those laws.  AMG has entered
8   into a joint venture agreement with CalEquity for the two leases mentioned in the motion,
9   and has a civil action pending against it, but it has claims that are entirely separate from
10   the claims in the state action, in addition to those in the state action.

11   (2)  The lawsuit in state court does not involve state laws or enforcement of state
12   laws.  The state is not a party to the lawsuit, nor is there any important state interest.  The
13   entire action involves enforcement of local land use laws, and the City's discriminatory
14   application of those laws.  The City enters into sham relocation agreements, gives Lamar
15   preference in the exercise of free speech, and then tries to clothe its blatant violation of the
16   first amendment as being somehow protected by state law allowing relocation agreements.
17   California courts have held that such agreements must comply with local law, and the first
18   amendment says that such laws cannot be applied "in the sole and absolute discretion" of
19   the local government.   The discriminatory treatment of Plaintiffs by the City are not
20   allowed by First Amendment, and cannot be glossed over by sham agreements that have
21   nothing to do with development or redevelopment.

22   (3)  There is no criminal proceeding involved in this action, nor is the City's action
23   in any way close to a criminal proceeding.  In order for a criminal proceeding to be filed,
24   and crime must have been committed, and CalEquity has committed no crime.  Before an
25   enforcement proceeding in the nature of the Huffman case, some violation of some law has
26   to have occurred.  Nothing of the sort has occurred here.  The fact that the City has tried to

27
28   **California Outdoor and AMG Reply to Opposition to Motion for Injunction**

Page 11

1   shoehorn CalEquity into the case is unavailing.  The City has to show that CalEquity has
2   violated its laws in order to fit into the <u>Huffman</u> exception.

3
4           Divorced from their quasi-criminal context, the three Middlesex conditions
            would extend Younger to virtually all parallel state and federal proceedings,
5           at least where a party could identify a plausibly important state interest. See
6           Tr. of Oral Arg. 35-36. That result is irreconcilable with our dominant
            instruction that, even in the presence of parallel state proceedings, abstention
7           from the exercise of federal jurisdiction is the "exception, not the rule."
8           <u>Hawaii Housing Authority v. Midkiff</u>, 467 U.S. 229, 236, 104 S.Ct. 2321, 81
            L.Ed.2d 186 (1984) (quoting <u>Colorado River</u>, 424 U.S., at 813, 96 S.Ct.
9           1236). In short, to guide other federal courts, we today clarify and affirm that
10          Younger extends to the three "exceptional circumstances" identified in
            NOPSI, but no further. (<u>Sprint v. Jacobs</u>, supra. 134 S.Ct. at pp. 593-94)
11
12          Defendant misled the court in its opposition to the TRO.  It named CalEquity in the
13  state action to be sure, but it supplied no evidence that CalEquity violated any city
14  ordinance.  In fact, CalEquity's only claim is the Constitutional claim that its free speech
15  and equal protection rights have been violated.  In addition, while there is ONE civil
16  enforcement claim pending against AMG, the other two sites, which are clearly a part of
17  this action, are also a basis for challenging, on federal grounds, the City's ban.  Since the
18  City cannot fit its claims into one of the three <u>NOPSI</u> categories, and "abstention is the
19  exception, not the rule," applying the <u>Younger</u> standards to this case would be improper.
20  The court can only get to those standards if it finds the case fits into one of the exceptions,
21  and Defendant has provided no evidence that the action against CalEquity is an
22  enforcement action, and the action against AMG on the two billboard locations on which
23  billboards have not been built is also NOT a civil enforcement action, since no law or
24  ordinance has been violated.  For these reasons, Plaintiff has shown that the abstention
25  doctrine will not prevent it from prevailing on its request for a preliminary injunction.
26
27
28
            **California Outdoor and AMG Reply to Opposition to Motion for Injunction**

            Page 12

### 3.  CORONA HAS UNCONSTITUTIONALLY DISCRMINATED AGAINST AMG BY GRANTING FREE SPEECH RIGHTS IN VIOLATION OF ITS ORDINANCE TO LAMAR, BUT DENYING THOSE SAME RIGHTS TO AMG AND CALEQUITY

The agreement between the City and Lamar, under the guise of a relocation of one condemned sign, allows Lamar to build several signs in violation of the city ordinances.  Some of the old signs were not even located in the City of Corona, yet the "relocation agreement" allows them to be built in the City limits.  That type of agreement is illegal, and discriminates against AMG in the exercise of its constitutional rights (Summit Media LLC v. City of Los Angeles (2012) 211 Cal.App.4th 921).

Perhaps the most frustrating part of the decisions rendered on this issue to date is the finding that the sham "relocation" agreements are a valid basis for discriminating in favor of Lamar and against Plaintiffs.  The decision in Summit Media LLC v. City of Los Angeles (2012) 211 Cal.App.4th 921 specifically provided that the city cannot do through agreement what it cannot do by law (211 Cal.App.4th at p. 934).

Leaving aside that, however, it is clear from both the declaration of Joanne Colletta and the agreement itself, the agreement was a sham to increase Lamar's revenue, and therefore the City's revenue, from these signs, and manipulate the price and availability of billboards in Corona.

How can a billboard that was static be grandfathered into a relocation agreement as a changeable message board?  Changeable message boards are clearly within the definition of off-site billboards (Corona Municipal Code §17.74.030).  That is a clear change of use

intended to increase the marketability of the billboard, not a grandfathering in of an existing sign.

How can a billboard be "relocated" at the same location, and upgraded to a changeable message board? How does that fit with Business and Professions Code §5412? It is obviously not done to "allow local entities to continue development…" In this case it was clearly done to, once again, increase Lamar's, and therefore the City's, revenue from these signs. The fact that the City gave Lamar, in the subsequent amendments, the power to move the billboards without further Council approval, is further evidence that the City was more concerned about its revenue that it was about the free speech rights of other speakers that may come into the City.

As important, the ability to grant or deny the permit for relocated billboards "in the sole and absolute discretion" of the City is suspect. CalEquity has billboards to relocate. The City won't even consider CalEquity's requests for relocation. Again, the City is discriminating against CalEquity in the exercise of its first amendment rights.

The Supreme Court said a municipality may not choose among speakers using their "sole and absolute discretion." In City of Lakewood v. Plain Dealer Publishing Company, 486 U.S. 750, 758, 108 S.Ct. 2138 (1988), Forsyth County, Georgia v. Nationalist Movement, 505 U.S. 123, 131, 112 S.Ct. 2395, 2402, 120 L.Ed.2d 101 (1992))

In the case decided by the Supreme Court on June 18, 2015, the court re-emphasized this principle, in Reed v. Town of Gilbert, supra. saying at p. 13 of the slip opinion (located at http://www.supremecourt.gov/opinions/14pdf/13-502_9olb.pdf):

> In any case, the fact that a distinction is speaker based does not, as the Court of Appeals seemed to believe, automatically render the distinction content neutral. Because "[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content," Citizens

United v. Federal Election Comm'n, 558 U. S. 310, 340 (2010), we have insisted that "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference,"

The Corona ban purports to be a complete ban, and the relocation agreement violates that ban with respect to the signs it allows. More important, the relocation agreement is only available to a party at the "sole and absolute" discretion of the City. Corona cannot discriminate between speakers on that basis (see <u>Reed</u>, above, at p. 13). CalEquity and AMG have the right to exercise their free speech rights on the same terms and conditions as the City has allowed others, and Defendant's ban, with the very broad exception of the "relocation" agreements, which can so easily be made a sham, as these agreements demonstrate, make that ban unconstitutional.

## 4.  <u>CORONA'S GENERAL BAN ON THE CONSTRUCTION OF BILLBOARDS IS UNCONSTITUTIONAL ON ITS FACE</u>

Corona Municipal Code §17.74.160 bans both commercial and noncommercial messages on billboards, but the ordinance in Section 17.74 allows for various signs of varying sizes that specifically allow commercial messages. As the declaration of J. Keith Stephens points out, the billboards to be built on the properties at issue in this motion will, from time to time, contain noncommercial messages, and therefore, noncommercial messages will receive less protection under the City's ban than commercial messages for on-site signs.

1
2
3
4
5

The Supreme Court very recently held, in a 9-0 decision (with at least 6 justices concurring in the opinion quoted below), that such content based distinctions are subject to strict scrutiny.  In <u>Reed v. Town of Gilbert</u>, supra., the Court, overruling a 9th Circuit Court of Appeals decision that relied on much of the appeals court's precedents on signs, said, at p. 9 of the slip opinion:

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

> That is why we have repeatedly considered whether a law is content neutral on its face before turning to the law's justification or purpose. See, e.g., Sorrell, supra, at ___–___ (slip op., at 8–9) (statute was content based "on its face," and there was also evidence of an impermissible legislative motive); United States v. Eichman, 496 U. S. 310, 315 (1990) ("Although the [statute] contains no explicit content-based limitation on the scope of prohibited conduct, it is nevertheless clear that the Government's asserted interest is related to the suppression of free expression" (internal quotation marks omitted)); Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U. S. 789, 804 (1984) ("The text of the ordinance is neutral," and "there is not even a hint of bias or censorship in the City's enactment or enforcement of this ordinance"); Clark v. Community for Creative Non-Violence, 468 U. S. 288, 293 (1984) (requiring that a facially content-neutral ban on camping must be "justified without reference to the content of the regulated speech"); United States v. O'Brien, 391 U. S. 367, 375, 377 (1968) (noting that the statute "on its face deals with conduct having no connection with speech," but examining whether the "the governmental interest is unrelated to the suppression of free expression"). Because strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny.

23
24
25
26
27

Corona's law is clearly content based.  Section 17.74.160 clearly bans off-site noncommercial speech while the rest of its ordinance allows on-site commercial speech.   In 1981, the US Supreme Court held San Diego's billboard ban unconstitutional on its face (<u>Metromedia, Inc v. City of San Diego</u> (1981) 453 U.S.

28

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

490, 521 and fn 26).  On remand from the US Supreme Court, with instruction to the California Supreme Court to determine whether unconstitutional portions of the San Diego ordinance on noncommercial speech could be severed from those regulating commercial speech, the California Supreme Court held that commercial speech sections could not be severed in <u>Metromedia, Inc. v. City of San Diego</u> (1982) 32 Cal.3d 180, saying the commercial/noncommercial distinction to be content based. In this case, CMC §17.74.160 specifically prohibits commercial and noncommericial speech.  The two cannot be separated, and the Supreme Court's recent reiteration of its rule in the <u>Reed</u> case, supra. only buttresses this argument.[4]

The <u>Reed</u> decision also re-emphasizes the principle that the City has the burden to prove that the regulation furthers a compelling government interest and is narrowly tailored to achieve that interest.  As the court said at p. 14 of the slip opinion:

> Because the Town's Sign Code imposes content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny, " 'which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest,'" Arizona Free Enterprise Club's Freedom Club PAC v. Bennett, 564 U. S. ___, ___ (2011) (slip op., at 8) (quoting Citizens United, 558 U. S., at 340). Thus, it is the Town's burden to demonstrate that the Code's differentiation between temporary directional signs and other types of signs, such as political signs and ideological signs, furthers a compelling governmental interest and is narrowly tailored to that end. See ibid. The Town cannot do so. It has offered only two governmental interests in support of the distinctions the Sign Code draws: preserving the Town's aesthetic appeal and traffic safety. Assuming for the sake of argument that

---

[4] Since the <u>Reed</u> case had not been decided when the court issued its opinion on the TRO, the court could not have considered it in rendering its opinion.  However, the language of that decision is clear, strict scrutiny applies in content based speech regulation such as that involved in this matter.  The 9th Circuit's decisions on billboards contrary to that assertion, as cited by this court, would have to be re-evaluated in the very strong language used by the Supreme Court in <u>Reed</u>.

those are compelling governmental interests, the Code's distinctions fail as hopelessly underinclusive.

The City's ordinance suffers from several defects that put the lie to the fact that the ordinance advances any City interest at all.

First, it allows for billboards that violate its ordinance, as long as the billboards are subject to a "relocation" agreement that may be granted on any terms the City feels are appropriate, even if the terms do not require the actual "relocation" of the sign, just allows a change of use. While there is good reason for relocation agreements in general, there must actually be a real, not sham, relocation, or agreements meant to circumvent, not protect, city regulations. The fact that Lamar is allowed to "relocate" a sign at the same "location" and upgrade the billboard to a new use, which would otherwise be prohibited under the City's law shows that the City has little concern for any of the negative effects of billboards. Its only concern is for the negative effects of billboards that are not owned by Lamar.

Second, it allows for on-site commercial messages and bans off-site noncommercial messages. Again, that is a content based regulation that sets the first amendment upside down. Greater regulation of noncommercial speech than commercial speech clearly violates first amendment values, values reiterated in the Reed decision rejecting 9th Circuit rulings to the contrary.

Third, it discriminates between speakers. If a billboard company is one of the City's chosen speakers, it can enter into an agreement that violates City ordinances, as long as the agreement is titled a "relocation" agreement, even if no relocation is actually involved. Once again, this undermines any stated government interest the City claims it is trying to promote by its general ban on billboards.

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

It is important to note that neither <u>Vanguard Outdoor v. City of Los Angeles</u>, 606 F.3d 898 (9th Cir., 2009) and <u>World Wide Rush v. City of Los Angeles</u>, 606 F.3d 676 (9th Cir. 2010) cited by Defendant and this court involve general bans within City limits. The Los Angeles ordinance at issue in that action allowed for billboards in specific parts of the City, in district specially set up for that purpose. That is not a general ban. While the Supreme Court's decision in <u>Reed</u> renders the decisions of the 9th Circuit in <u>Vanguard</u> and <u>World Wide Rush</u> suspect, those decisions would not be applicable to this case because they do not involve citywide ban, and certainly do not involve an ordinance that allows the City to violate the ordinance without restriction. In fact, when it tried to do so, the State Court invalidated that attempt in the <u>Summit</u> case.

Defendant's ban is a general ban on all billboards, regardless of content, throughout the City, unless the billboard company can obtain the political clout, and pay sufficient tribute, to the City to build the billboard. The First Amendment values reiterated by the Supreme Court in the <u>Reed</u> case prohibit that kind of regulation of free speech. For that reason. Plaintiffs respectfully request this court enjoin enforcement of Defendant's general ban on billboards.

# 5. <u>CONCLUSION</u>

Plaintiffs have shown that, based on the facts as they have now been honestly set forth before this court, they will prevail on the merits in this action.

First, the state action upon which Defendant relies to apply the <u>Younger</u> doctrine is not an enforcement action against CalEquity at all, or against AMG on the two new signs. This action therefore falls under the principles enunciated in <u>NOPSI</u>, supra, not <u>Younger</u>.

Second, the "relocation" agreements have been shown to be sham agreements, and therefore do not fall within the protection of B&P. C. §5412, as Defendant has claimed. To allow the agreement at issue in this case to stand would allow every city to violate first

amendment protections with impunity simply by labeling the special privileges granted to the favored billboard company "relocation" agreements.  That would violate both first amendment equal protections rights (<u>Reed v. Town of Gilbert</u>, supra. slip opinion at pp. 12-13) and California state law (<u>Summit v. City of Los Angeles</u>, supra., 211 Cal.App.4th at p. 934).

Finally, as the Supreme Court has recently reiterated, a ban that is content or speaker based must meet strict scrutiny requirements.  In this action, the Corona ban clearly bans commercial and noncommercial messages if those messages are on a billboard.  On the other hand, it allows commercial messages on signs of similar size, location, and construction, as long as those signs are attached to a property on which the business being advertised is located.  While the City could regulate between on-site and off-site commercial messages, it cannot grant greater protection to on-site commercial messages than it does to noncommercial message (<u>Reed</u>, supra. slip opinion at p. 14, <u>Metromedia</u>, supra., 32 Cal.3d 180).

Plaintiff has shown it is likely to prevail on the merits in this action, and therefore respectfully requests that this court grant its request for a preliminary injunction.

Dated:  June 22, 2015

Respectfully submitted


By:    /s/Raymond N. Haynes
       Raymond N. Haynes
       Attorney for Plaintiffs

---

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

# DECLARATION OF J. KEITH STEPHENS

I am the president of California Outdoor Equity, LLC, and I have been actively engaged in the outdoor advertising business in Southern California for over 30 years. CalEquity has been seeking leases, and obtained at least two leases in the City of Corona to build billboards.  This declaration is made in reply to Defendant's opposition to Plaintiffs' request for a temporary restraining order and preliminary injunction prohibiting enforcement of the City's ban on billboards.

I have personal knowledge of the facts stated in this declaration, and I could competently testify to the following facts if called as a witness.

CalEquity is a new entity, but I am not new to billboards in Southern California.  I been President of the businesses known as Valley Outdoor, VMG Advertising, and I have operated companies for Regency Outdoor Advertising and LA Outdoor Advertising, consulted with Kunz Outdoor and Adams Outdoor, and worked with various other outdoor advertising companies over the years.  I have been involved in a number of (successful) lawsuits challenging unconstitutional ordinances in the Cities of Corona, Riverside, Moreno Valley, Oceanside, Baldwin Park, South El Monte, Los Angeles, and other cities in Southern California, as well as lawsuits against the Counties of Orange and Riverside to challenge illegal sign ordinance in those counties.

Exhibit 1 to this declaration is pictures of the two signs that are supposedly subject to the relocation agreements.  I have been actively involved in billboards in the billboards for years in the Inland Empire, and I have been involved in the building of signs in the area these signs were located, so I know what the signs that these signs replaced looked like.  The new billboards are located in the same place they were before the alleged relocation agreement.  Originally, the signs were 4 static faces, with leasable billboard space of 300 square feet per face.  After the "relocation" agreement, two of the sign faces replaced static faces with changeable faces, which almost quadruples the revenues that can be obtained

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

from those same signs. Second, the new billboards are 672 square feet per face, over double the size of the original signs, which is the equivalent of adding twelve new signs controlled by Lamar to the exclusion of everyone else.   In addition, there was no new development in this area (the industrial buildings were built before the "relocation" agreements), so the billboards that were located at that location were simply replaced to increase their value, not to promote any planned development in the City.  Combining that large increase in size with the message board capability, Lamar (and the City of Corona) are able to increase the revenue from those billboards by over 500 percent.   I am personally aware of what billboards along Interstate 15 in Corona can obtain in monthly revenue, and can say, without equivocation, that Lamar's "relocation" agreement at least tripled its revenue, by giving Lamar a major increase in use and size of the billboards in the exact same location at the smaller static signs gave them.

It has been, and always will be, the business practice of any billboard company in which I am involved, to place noncommercial messages on the billboards I control from time to time.  I know AMG has put political advertising on its billboards because I have seen it on their billboards around Southern California.  I have put both political and public service messages on the billboards owned by my companies.  It is a part of the commitment I and my business partners have had to public service and the exchange of ideas and communication.  The billboards located in Corona (that have not been built, but are a part of this lawsuit challenging the general ban by Corona) will have such messages.  Right now, the City's general ban prohibits such messaging.

To reiterate, CalEquity has not built a single billboard in Corona.  Its sole concern as Plaintiff in this action is to vindicate its First Amendment rights in the City of Corona. The City has joined CalEquity in the enforcement proceeding in the state court for the sole purpose of misleading this court into thinking the City has a factual basis for pursuing an enforcement action against CalEquity.  It does not.  The City is abusing the process of the state court to try and shoehorn a finding that abstention is appropriate in this case, when it is not.

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**

1         I declare under penalty of perjury under the laws of the State of California the

2    foregoing is true and correct.  Executed on June 22, 2015 in Corona, Ca.

3

4                                 /s/J. Keith Stephens

5                                    J. Keith Stephens

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**California Outdoor and AMG Reply to Opposition to Motion for Injunction**