STAYED
JS-6

1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                              CENTRAL DISTRICT OF CALIFORNIA

9

10   CALIFORNIA OUTDOOR EQUITY          )   CASE NO. CV 15-03172 MMM (AGRx)
     PARTNERS; and AMG OUTDOOR          )
11   ADVERTISING, INC.,                 )   ORDER GRANTING DEFENDANTS'
                                        )   MOTION TO DISMISS/STAY; DENYING
12                  Plaintiffs,         )   MOTION FOR PRELIMINARY
                                        )   INJUNCTION
13           vs.                        )
                                        )
14   CITY OF CORONA, a California Municipal )
     Corporation                        )
15                                      )
                    Defendants.         )
16                                      )
     _____)

17

18           On April 28, 2015, California Outdoor Equity Partners ("COEP") and AMG Outdoor

19   Advertising, Inc. ("AMG") (collectively, "plaintiffs") filed this action against the City of Corona

20   ("the City") and various fictitious defendants.[1]  The claims concern allegedly unequal enforcement

     of a ban on off-site commercial billboards in the City that is purportedly unconstitutional on its face.

21           On April 30, 2015, plaintiffs filed a motion for preliminary injunction, which they noticed

22   for hearing on July 6, 2015.[2]  On May 21, 2015, plaintiffs filed an *ex parte* application for temporary

23   restraining order,[3] which the court denied, finding that plaintiffs had failed to show a likelihood of

24

25   _____

26       [1]Complaint, Docket No. 1 (Apr. 28, 2015).

27       [2]Motion for Preliminary Injunction, Docket No. 10 (Apr. 30, 2015).

28       [3]*Ex Parte* Application, Docket No.15 (May 21, 2015).

success on the merits of their claims.[4]  Also on May 21, 2015, the City filed a motion to dismiss.[5]  Both the motion to dismiss and the motion for preliminary injunction are opposed.[6]

## I.  FACTUAL BACKGROUND

### A.     Facts Alleged in the Complaint

The City of Corona Municipal Code § 17.74.160 prohibits the construction or operation of outdoor, off-site, commercial signs, i.e., billboards.[7]  The ban does not apply to on-site commercial billboards, or to noncommercial billboards.[8]  Section 17.74.070(H) provides for the relocation of previously existing off-site, commercial billboards.  Specifically, it states: "[N]ew off-premises advertising displays . . .  may be considered and constructed as part of a relocation agreement requested by the city or redevelopment agency and entered into between the city or redevelopment agency and a billboard and/or property owner. . . .  Such agreements may be approved by the City Council upon terms that are agreeable to the city and/or redevelopment agency in their sole and absolute discretion."[9]

Plaintiffs allege that the City's ban on off-site, commercial billboards violates the First Amendment and the free speech clause of the California constitution because it is an impermissible content-based regulation of free speech.[10]  They also contend that § 17.74.070(H) is invalid as a prior

---

[4]Order Denying *Ex Parte* Application for Temporary Restraining Order, Docket No. 28 (May 27, 2015).

[5]Motion to Dismiss ("Motion"), Docket No. 17 (May 21, 2015).

[6]Opposition to Motion to Dismiss ("Opposition"), Docket No. 30 (June 15, 2015); Opposition to Preliminary Injunction, Docket No. 31 (June 15, 2015).

[7]Complaint, ¶ 9.  "Off-site billboards display messages directing attention to a business or product not located on the same premises as the sign itself.  For example, a billboard promoting the latest blockbuster movie, but attached to a furniture store, is an off-site sign.  The same billboard, when attached to a theater playing the movie, is an on-site sign."  *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 682 (9th Cir. 2010).

[8]*Id.*

[9]*Id.*, ¶ 10.

[10]*Id.*, ¶ 8.

1   restraint on free speech, given that it vests the City Council with unfettered discretion to approve

2   relocation of preexisting off-site commercial billboards.  Finally, they assert that even if the ban is

3   constitutional, it is being applied in a discriminatory manner in violation of the equal protection clause

4   set forth in Article 1, Section 7 of the California constitution, because the City is permitting Lamar

5   Advertising Company ("Lamar") to build new billboards while denying them the right to do so.[11]

6   **B.     The State Court Proceedings**

7        On December 30, 2014, the City filed a nuisance abatement action in Riverside Superior Court

8   against AMG and other non-parties, alleging, *inter alia*, claims for public nuisance arising out of the

9   state court defendants' violation of the City's ban on off-site commercial billboards.[12]  On January 7,

10  2015, the superior court granted the City's application for temporary restraining order.  The state court

11  defendants sought a writ of mandate vacating the temporary restraining order; their petition was

12  summarily denied by the California Court of Appeal.[13]  On January 23, 2015, the superior court issued

13  a preliminary injunction in favor of the City,[14] which is the subject of a pending appeal.[15]  Although the

14  initial complaint named only AMG and various other individuals and entities that are not parties to this

15  action, COEP was added as a party in the first amended complaint, filed May 18, 2015.[16]

16

17   **II.  DISCUSSION**

18  **A.     The City's Request for Judicial Notice**

19        The City asks the court to take judicial notice of certain portions of its Municipal Code, as well

20

21        [11]*Id.*, ¶ 23.

22
23        [12]Declaration of John D. Higginbotham re: Motion to Dismiss ("Higginbotham Decl."), Docket
      No. 19 (May 21, 2015), Exh. 3 ("State Court Complaint").  The court takes judicial notice of this and
24   various other state court filings *infra*.

25        [13]*Id.*, Exh. 2 ("State Court Docket") at 8.

26        [14]*Id.*, Exh. 5 ("Preliminary Injunction").

27        [15]*Id.*, Exh. 6 ("Notice of Appeal").

28        [16]*Id.*, Exh. 8 ("State Court FAC") at 1.

as the docket and various court filings in the pending state court action against plaintiffs.[17]  Plaintiffs do not oppose the request.  Because Rule 12(b)(6) review is confined to the complaint, the court typically does not consider material outside the pleadings (e.g., facts presented in briefs, affidavits, or discovery materials) in deciding such a motion.  *In re American Continental Corp./Lincoln Sav. & Loan Securities Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996).  It may, however, properly consider exhibits attached to the complaint and documents whose contents are alleged in the complaint but not attached, if their authenticity is not questioned.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

In addition, the court can consider matters that are proper subjects of judicial notice under Rule 201 of the Federal Rules of Evidence.  *Id.* at 688-89; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").[18] The court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).

The City asks that the court take judicial notice of six documents filed in the state court action, as well as the docket in that case.[19]  These documents bear directly on whether the court can properly exercise jurisdiction in this case.  It is well established that federal courts may take judicial notice of state court orders and proceedings when they bear on the federal action.  See *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); see also *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (stating that an appellate court "may take

---

[17]Request for Judicial Notice ("RJN"), Docket No. 18 (May 21, 2015) at 2-3.

[18]Taking judicial notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment.  *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

[19]RJN at 2-3.

1  notice of proceedings in other courts, both within and without the federal judicial system, if those

2  proceedings have a direct relation to matters at issue"); *ScripsAmerica, Inc. v. Ironridge Global LLC*,

3  56 F.Supp.3d 1121, 1136 (C.D. Cal. 2014) ("It is well established that federal courts may take judicial

4  notice of related state court orders and proceedings.").

5      The City also requests that the court notice certain relevant portions of the municipal code.

6  Under Rule 201, municipal ordinances are proper subjects of judicial notice because they are not subject

7  to reasonable dispute.  See *Tollis, Inc. v. County of San Diego,* 505 F.3d 935, 938 n. 1 (9th Cir. 2007)

8  ("Municipal ordinances are proper subjects for judicial notice"); *Engine Mfrs. Ass'n v. South Coast Air*

9  *Quality Management Dist.,* 498 F.3d 1031, 1039 n. 2 (9th Cir. 2007) (taking judicial notice of a

10  municipal ordinance and stating that "[m]unicipal ordinances are proper subjects for judicial notice");

11  *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n. 2 (9th Cir. 2006)

12  (taking judicial notice of Santa Monica Ordinances Nos. 2116 and 2117).  The court accordingly takes

13  judicial notice of the various sections of the Corona Municipal Code that are the subject of the City's

14  judicial notice request.

15      **B.    Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)**

16      A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  A

17  Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the

18  absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*,

19  901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations pleaded in the

20  complaint as true, and construe them and draw all reasonable inferences from them in favor of the

21  nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*,

22  57 F.3d 747, 750 (9th Cir. 1995).

23      The court need not, however, accept as true unreasonable inferences or conclusory legal

24  allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

25  555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

26  factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

27  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

28  will not do").  Thus, a complaint must "contain sufficient factual matter,  accepted as true, to 'state a

1   claim to relief that is plausible on its face.' . . .  A claim has facial plausibility when the plaintiff pleads

2   factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3   misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 555

4   ("Factual allegations must be enough to raise a right to relief above the speculative level, on the

5   assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations

6   omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint

7   to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

8   content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and

9   *Twombly*).

10          **C.      Whether the Court Should Abstain from Deciding Plaintiffs' Claims under**

11          ***Younger v. Harris***

12                  **1.      Legal Standard Governing Abstention under *Younger***

13          Under the doctrine first articulated in *Younger v. Harris*, 401 U.S. 37 (1971), federal courts must

14   abstain from hearing cases that would interfere with pending state court proceedings that implicate

15   important state interests.  *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 881 (9th Cir.

16   2011) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

17   The doctrine is justified by considerations of comity – "a proper respect for state functions, a recognition

18   of the fact that the entire country is made up of a Union of separate state governments, and a

19   continuance of the belief that the National Government will fare best if the States and their institutions

20   are left free to perform their separate functions in their separate ways."  *Younger*, 401 U.S. at 44.

21          "Absent 'extraordinary circumstances,' abstention in favor of state judicial proceedings is

22   required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide

23   the plaintiff an adequate opportunity to litigate federal claims."  *Hirsh v. Justices of Supreme Court of*

24   *California*, 67 F.3d 708, 712 (9th Cir. 1995) (citing *Middlesex County Ethics Commission*, 457 U.S. at

25   437).   Even then, abstention is appropriate only where the federal action enjoins the state court

26   proceedings or has the practical effect of doing so.  *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143,

27   1149 (9th Cir. 2007); *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004) (en banc) ("*If a*

28   *state-initiated proceeding is ongoing, and if it implicates important state interests . . . , and if the federal*

1    litigant is not barred from litigating federal constitutional issues in that proceeding, *then* a federal court

2    action that would enjoin the proceeding, or have the practical effect of doing so, would interfere in a

3    way that *Younger* disapproves" (emphasis original)).

4           While the Supreme Court has never directly addressed the subject, the Ninth Circuit has held

5    "that *Younger* principles apply to actions at law as well as for injunctive or declaratory relief."

6    *Gilbertson*, 381 F.3d at 968 (reasoning that "a determination that the federal plaintiff's constitutional

7    rights have been violated would have the same practical effect as a declaration or injunction on pending

8    state proceedings"). "If, in a case in which the plaintiff seeks damages, the court determines that the

9    *Younger* abstention is appropriate, it should stay the matter until the state court proceedings are

10   concluded, rather than dismissing the action." *ScripsAmerica, Inc.*, 56 F.Supp.3d at 1143 (citing

11   *Gilbertson*, 381 F.3d at 981-82).

12                **2.**      **Application of *Younger* to the Facts of this Case**

13                     **i.**      **Whether State Court Proceedings Are Ongoing**

14          The City argues that it filed a state court action in the name of the People of the State of

15   California against both COEP and AMG, and that the case is ongoing for purposes of *Younger*.[20] The

16   state action was filed on December 30, 2014,[21] and there is no dispute that it is presently pending.[22]

17   Initially, the state court complaint named only AMG and various other individuals and entities that

18   are not parties to this action.  COEP was added as a party in the first amended complaint, filed May

19   18, 2015.[23]  The fact that COEP was added as a state court defendant after plaintiffs filed this action

20   does not affect the court's conclusion that the state court action is ongoing.  "Whether the state

21   proceedings are 'pending' is not determined by comparing the commencement dates of the federal

22   and state proceedings.  Rather, abstention under *Younger* may be required if the state proceedings

23   have been initiated 'before any proceedings of substance on the merits have taken place in the

24   _____

25          [20]See State Court FAC.

26          [21]See "State Court Complaint" at 1

27          [22]See State Court Docket.

28          [23]State Court FAC at 1.

                                                        7

1   federal court.'"  *M&A Gabaee v. Community Redevelopment Agency of City of Los Angeles*, 419

2   F.3d 1036, 1041 (9th Cir. 2005) (quoting *Polykoff v. Collins,* 816 F.2d 1326, 1332 (9th Cir. 1987));

3   see also *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) ("[W]e now hold that where state criminal

4   proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any

5   proceedings of substance on the merits have taken place in the federal court, the principles of

6   *Younger v. Harris* should apply in full force").

7        State court proceedings against AMG commenced months before this action was filed in

8   federal court on April 28, 2015.  COEP was added as a defendant approximately one month after

9   the state case was filed; prior to COEP's addition as a party, however, there were no proceedings

10  in the federal action.  Although plaintiffs in this action filed a motion for preliminary injunction on

11  April 30, 2015, they noticed it for hearing on July 7.  Meanwhile, there have been significant

12  developments in the state court action.  The superior court has entered a temporary restraining order

13  in favor of the City;[24] additionally, the state court defendants sought a writ of mandate vacating the

14  temporary restraining order, which was summarily denied by the California Court of Appeal.[25]  The

15  superior court also issued a preliminary injunction in favor of the City,[26] which is the subject of a

16  pending appeal.[27]  See *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* ("*NOPSI*"), 491

17  U.S. 350, 369 (1989) ("For *Younger* purposes, the State's trial-and-appeals process is treated as a unitary

18  system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate

19  a lack of respect for the State as sovereign. . . .  [Thus, a] 'necessary concomitant of *Younger* is that a

20  party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust his state

21  appellate remedies before seeking relief in the District Court,'" quoting *Huffman v. Pursue, Ltd.*, 420

22  U.S. 592, 608 (1975)).  Accordingly, the court concludes that state proceedings were initiated before

23  _____

24      [24]State Court Docket at 10.

25      [25]*Id.* at 8.

26      [26]Declaration of John D. Higginbotham in Support of Motion to Dismiss ("Higginbotham

27  Decl."), Docket No. 18 (May 22, 2015), Exh. 5 ("Preliminary Injunction").

28      [27]*Id.*, Exh. 6 (Notice of Appeal).

1   any proceedings of substance on the merits had taken place in this case, and that the state proceedings

2   are ongoing for *Younger* purposes.  See *Hicks*, 422 U.S. at 349; *M&A Gabaee*, 419 F.3d at 1041.

3        In their opposition, and again at the hearing, plaintiffs disputed this conclusion.  They argued

4   that COEP is not a proper party to the state court proceedings because it did not build any signs on the

5   locations there at issue.  The first amended state court complaint alleges that COEP was "created in

6   November of 2014 by [plaintiffs'] counsel, [and that its] primary purpose [is] to assist AMG [in its]

7   illegal attempts to acquire sites for, erect, operate and/or own illegal billboards."[28]  It also pleads that

8   "there is such a unity of interest, ownership, and control between AMG[ ] and [COEP], and such a

9   complete disregard of the corporate form and formalities, that the separate personalities of these entities

10  no longer exist, and that if the acts of one or more of them are treated as those of that entity alone, it

11  would sanction a fraud or promote injustice."[29]  The City asserts that such practices are common among

12  billboard companies and that they are undertaken "to create additional procedural hurdles for public

13  agencies and courts to jump through and to avoid effective judicial relief."[30]  It is thus clear not only that

14  COEP is a party to the state court action, but that the first amended state court complaint alleges a basis

15  for imposing liability on it, i.e., that it is an alter ego of AMG.  See *D.L. v. Unified Sch. Dist. No. 497*,

16  392 F.3d 1223, 1230 (10th Cir. 2004) ("when in essence only one claim is at stake and the legally

17  distinct party to the federal proceeding is merely an alter ego of a party in state court, *Younger* applies");

18  *Cedar Rapids Cellular Tel., L.P. v. Miller,* 280 F.3d 874, 882 (8th Cir. 2002) (corporation could not

19  avoid *Younger* by having subsidiaries sue in federal court when federal relief could obstruct enforcement

20  of state-court remedy); cf. *Spargo v. N.Y. State Com'n on Jud. Conduct,* 351 F.3d 65, 81-84 (2d Cir.

21  2003) (*Younger* applies to persons not parties in state proceedings when the free-speech right asserted

22  in the federal action is purely derivative of the free-speech rights of the defendant in the state

23  proceeding).

24        Plaintiffs ask the court to conclude that COEP is a sham party in state court, and permit it to

26  [28]State Court FAC, ¶ 8.

27  [29]*Id.*

28  [30]*Id.*

9

1   prosecute this action on that basis.  To the extent plaintiffs dispute the existence of an alter ego

2   relationship, and dispute that COEP violated the municipal code, the proper forum to litigate those

3   questions is the state court.  See *Burlington Ins. Co. v. Panacorp, Inc.*, 758 F.Supp.2d 1121, 1134-35

4   (D. Haw. 2010) (finding that *Younger* abstention was warranted where Hawaii state law was unsettled

5   regarding as to whether an insurance policy afforded coverage for a solely-owned corporation that was

6   allegedly an alter ego of the individual named insured because the alter ego issue "was best resolved in

7   the first instance by state court").  To hold otherwise would eviscerate the underlying purpose of

8   *Younger* abstention, i.e., to ensure "a proper respect for state functions," *Younger*, 401 U.S. at 44, and

9   "would both unduly interfere with the legitimate activities of the state and readily be interpreted as

10  reflecting negatively upon the state courts' ability to enforce [legal and] constitutional principles,"

11  *Gilbertson*, 381 F.3d at 972 (internal quotation marks and citation omitted).  Plaintiffs' argument that

12  *Younger* is inapplicable because COEP is not a proper party in the state court action is therefore

13  unavailing.

### ii.   Important State Interest

15      "Circumstances fitting within the *Younger* doctrine, [the Supreme Court has] stressed, are

16  'exceptional'; they include, . . . 'state criminal prosecutions,' 'civil enforcement proceedings,' and

17  'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability

18  to perform their judicial functions.'"  *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588

19  (2013).  In state court, the City has alleged, *inter alia*, a cause of action for public nuisance based

20  on purported violations of its municipal ban on off-site, commercial billboards.[31]  See CORONA

21  MUNICIPAL CODE, § 17.74.160 ("Except as provided in § 17.74.070(H), outdoor advertising signs

22  (billboards) are prohibited in the City of Corona.  The city shall comply with all provisions of the

23  California Business & Professions Code regarding amortization and removal of existing off-premise

24  and outdoor advertising displays and billboard signs").[32]  The state court action is thus an

---

[31]FAC, ¶¶ 14-25.

[32]The City supplies the relevant portions of the Corona Municipal Code as attachments to
Higginbotham's declaration.  (See Higginbotham Decl., Exh. 1 at 10.)

1   enforcement action by the City to abate a purported public nuisance.

2         In *Huffman*, 420 U.S. at 604, the Supreme Court held that abstention was appropriate where

3   the state filed a civil action against a theater displaying obscene movies in violation of state nuisance

4   law because "an offense to the State's interest in . . . nuisance litigation is likely to be every bit as

5   great as it would be were this a criminal proceeding." *Id*. Plaintiffs maintain that the *state* is not a

6   party to the state court action, and hence *Huffman* is inapposite.[33] There is no merit to this assertion.

7   The Ninth Circuit has repeatedly held that "[c]ivil actions brought by a *government entity* to enforce

8   nuisance laws have been held to justify *Younger* abstention." *Woodfeathers, Inc. v. Washington*

9   *County, Or.*, 180 F.3d 1017, 1021 (9th Cir. 1999) (emphasis added). Indeed, in *World Famous*

10  *Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987), the Ninth Circuit

11  held that a civil action brought by a municipality "to obtain compliance with [a municipal zoning]

12  ordinance which aime[ed] at avoidance of public nuisances" implicated important state interests

13  justifying abstention.

14        Plaintiffs also assert that *Younger* does not apply because there is no *criminal* action pending

15  against them.[34] As the Supreme Court recently reiterated, however, "'civil enforcement

16  proceedings'" can trigger *Younger* abstention. See *Sprint Communications, Inc.*, 134 S. Ct. at 588;

17  see also *Woodfeathers, Inc.*, 180 F.3d at 1021 ("[c]ivil actions brought by a government entity to

18  enforce nuisance laws have been held to justify *Younger* abstention"); *World Famous Drinking*

19  *Emporium*, 820 F.2d at 1082 (a civil action filed by a municipality "to obtain compliance with [a

20  municipal zoning] ordinance which aime[ed] at avoidance of public nuisances" qualified for

21  *Younger* abstention).

22        Here, the City has filed a civil action to enjoin a public nuisance. *Younger* is therefore

23  properly invoked. In fact, the interest at stake is essentially as great as it would be if a criminal

24  proceeding were involved, given that the City has the ability to prosecute violations of the billboard

25  ban as misdemeanors under the Corona Municipal Code. See CORONA MUNICIPAL CODE § 1.08.020

26  ─────────────────

27      [33]Opposition at 9-10.

28      [34]*Id*. at 10-11.

("It shall be unlawful for any person to erect, construct, enlarge, alter, repair, move, use, occupy, or maintain any real or personal property or portion thereof in the city or cause the same to be done contrary to or in violation of any provision of this title. . . .  [A]ny person violating any of the provisions or failing to comply with the requirements of this title, . . . is guilty of a misdemeanor or infraction at the discretion of the City Attorney"); *City of Corona v. Naulls*, 166 Cal.App.4th 418, 433 (2008) ("Section 1.08.020, subdivision (A), of the City's municipal code provides that, unless a different penalty is prescribed, the violation of any provision of or failure to comply with any of the requirements of the code is punishable as a misdemeanor.  Additionally, pursuant to section 1[.]08.020, subdivision (B), 'any condition caused or permitted to exist in violation of any of the provisions of this code is a public nuisance and may be, by this city, abated as such'").  Under *Huffman* and its progeny, because the state court proceeding is a civil enforcement action seeking to abate a public nuisance, it implicates important state interests for purposes of *Younger* abstention.

### iii.    Adequate Opportunity to Litigate Federal Claims

To invoke *Younger* abstention, plaintiffs "need be accorded only an *opportunity* to fairly pursue [their] constitutional claims in the ongoing state proceedings." *Juidice v. Vail*, 430 U.S. 327, 337 (1977) (emphasis added).  "*Younger* requires only the absence of 'procedural bars' to raising a federal claim in the state proceedings." *Communications Telesystems Int'l v. California Public Utilities Commission*, 196 F.3d 1011, 1020 (9th Cir. 1999) (citing *Middlesex County Ethics Commission*, 457 U.S. at 432 ("[A] federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims'")); see also *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (holding that a federal plaintiff must show "'that state procedural law barred presentation of [his] claims'").  "[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co.*, 481 U.S. at 15; *Meredith v. Oregon*, 321 F.3d 807, 818 (9th Cir. 2003) (same).  Stated differently, *Younger* abstention "presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973).

Plaintiffs assert claims for violation of the First Amendment to the United States Constitution

and violation of the equal protection and free speech clauses of the California constitution.  There is no question that they have an opportunity to raise these claims in the state court action.  Indeed, AMG filed a counterclaim in state court alleging precisely these claims on January 16, 2015.[35]  The fact that plaintiffs allege First Amendment violations does not change this fact.  "[T]he mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction."  *NOPSI*, 491 U.S. at 365.  "Minimal respect for . . . state processes . . . precludes any presumption that the state courts will not safeguard federal constitutional rights."  *Middlesex County Ethics Commission*, 457 U.S. at 431.  "*Younger* itself involved a First Amendment challenge to an ongoing criminal prosecution, but even that was insufficient to require the federal court to ignore principles of federalism and interfere with the state's proceedings."  *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 619 (9th Cir. 2003) (citing *Younger*, 401 U.S. at 43–45).  Thus, the importance of the First Amendment rights at stake in this action does not alter the abstention analysis.  See *Middlesex County Ethics Commission*, 457 U.S. at 431 (abstaining in a case that sought to enjoin a state ethics proceeding despite plaintiff's claim that the proceeding violated his First Amendment rights); see also *Younger*, 401 U.S. at 54 ("It is sufficient for purposes of the present case to hold, as we do, that the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it, and that appellee Harris has failed to make any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief"); *World Famous Drinking Emporium, Inc.*, 820 F.2d at 1082 ("A First Amendment challenge does not alter the propriety of abstention in [an action seeking to enjoin enforcement of a zoning ordinance]").  Accordingly, *Younger*'s third prong is also satisfied in this case.

> ### iv.   Whether the Federal Action Would Enjoin or Have the Practical Effect of Enjoining the State Court Proceedings

Having concluded that the *Younger* factors counsel in favor of abstention, the court must next

---

[35]Higginbotham Decl., Exh 4 (State Court Counterclaim).  The allegations supporting the federal complaint and the state court counterclaim are substantially identical.

13

1    decide whether the "federal court action . . . would enjoin the [state court] proceeding, or have the

2    practical effect of doing so." *Gilbertson*, 381 F.3d at 978.  The state court enjoined AMG and others

3    from "operating, allowing, using, and advertising on the [ ] billboard located at 3035 Palisades Dr.,

4    Corona, California."  It further ordered them immediately to "remove the billboard, including the pole,

5    the panels, and the entire structure," and restrained and enjoined them from "constructing or erecting

6    any additional billboards in the City of Corona without first obtaining all required permits."[36]  The

7    propriety of the injunction is presently being appealed.

8         Plaintiffs in this case seek to have the court enjoin the City from (1) "[i]nterfering with the

9    operation or maintenance of billboards at . . . 3035 Palisades [Dr.], Corona[, California]"; (2) threatening

10   plaintiffs' lessors or advertisers with enforcement actions or fines; (3) claiming that the billboards are

11   illegal or being operated illegally; (4) attempting to collect fines as a result of the operati[on] of the

12   billboard; and (5) taking any other action adverse to the billboard.[37]  Given the relief plaintiffs seek, the

13   court concludes that this action would have the practical effect of enjoining the state court proceedings.

14   Plaintiffs seek to have the court issue an injunction directing the City to cease interfering with the

15   maintenance of their billboards, and the ultimate relief they seek in this action is a declaration that the

16   provision of the Corona Municipal Code that regulates billboards is unconstitutional.  This would

17   unquestionably preclude the continued prosecution of the civil enforcement action pending in state

18   court.  Like the plaintiff in *Younger*, therefore, they seek to enjoin the City "from [enforcing] California

19   [municipal ordinances], [which is] a violation of the national policy forbidding federal courts to stay or

20   enjoin pending state court proceedings except under special circumstances."  See 401 U.S. at 41; see

21   also *Huffman*, 420 U.S. at 604-05 ("Similarly, while in this case the District Court's injunction has not

22   directly disrupted Ohio's criminal justice system, it has disrupted that State's efforts to protect the very

23   interests which underlie its criminal laws and to obtain compliance with precisely the standards which

24   are embodied in its criminal laws"); *Outdoor Media Dimensions, Inc. v. Warner*, 58 Fed. Appx. 293,

25   294 (9th Cir. Feb. 19, 2003) (Unpub. Disp.) (holding that *Younger* abstention was warranted in an action

26

27        [36]Preliminary Injunction at 2.

28        [37][Proposed] Order Granting Preliminary Injunction, Docket No. 34-1 (June 22, 2015).

1   challenging the constitutionality of Oregon statutes proscribing the use of billboards due to the pendency

2   of state administrative proceedings).

3                              v.      **Exceptions to *Younger* Abstention**

4           "In *Younger*, the Supreme Court stated that federal courts may enjoin pending state court

5   proceedings in 'extraordinary circumstances,' such as when the statute involved is 'flagrantly and

6   patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in

7   whatever manner and against whomever an effort might be made to apply it.'" *Dubinka v. Judges of*

8   *Superior Court of State of Cal. for County of Los Angeles*, 23 F.3d 218, 225 (9th Cir. 1994) (quoting

9   *Younger*, 401 U.S. at 53-54 (in turn quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941))).  In addition,

10  "[b]ad faith prosecution or harassment make abstention inappropriate even where [the *Younger*]

11  requirements are met." *World Famous Drinking Emporium, Inc*., 820 F.2d at 1082 (citing *Younger*, 401

12  U.S. at 47-49).

13          The ordinance at issue here bans off-site, commercial billboards.  It is well settled that such bans

14  are constitutional under the Supreme Court's *Central Hudson Gas & Electric Corp. v. Public Service*

15  *Commission*, 447 U.S. 557 (1980), test for government regulation of commercial speech.  See

16  *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 511-14 (1981) (holding that it was permissible to

17  distinguish between on-site and off-site commercial signs, while declaring a San Diego ordinance

18  unconstitutional because of its general ban on noncommercial signs); *Clear Channel Outdoor, Inc. v.*

19  *City of Los Angeles*, 340 F.3d 810, 814 (9th Cir. 2003) ("The Supreme Court, the Ninth Circuit, and

20  many other courts have held that the on-site/off-site distinction is not an impermissible content-based

21  regulation"); *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 610-11 (9th Cir. 1993) ("*Metromedia*

22  remains the leading decision in the field, holding that a city, consistent with the *Central Hudson* test,

23  may ban all offsite commercial signs, even if the city simultaneously allows onsite commercial signs").

24  This is true even where, as here, they "grandfather" existing  billboards and permit them to remain.  See

25  *Maldonado v. Morales*, 556 F.3d 1037, 1048 (9th Cir. 2009) (holding that the grandfathering clause of

26  the California Outdoor Advertising Act had only to survive "at most, an intermediate level of scrutiny"

27  and holding that "[t]he state's interest is substantial and easily passes the necessary scrutiny to overcome

28  [an] equal protection challenge").  Thus, the billboard bans at issue here are not flagrantly and patently

                                                    15

1    unconstitutional.

2            The Supreme Court's recent decision in *Reed v. Town of Gilbert, Ariz.*, __ U.S. __ , 2015 WL

3    2473374 (U.S. June 18, 2015), does not alter this conclusion.  As the City notes in reply, in terms of its

4    application to this case, *Reed* is most notable for what it is not about, and what it does not say.  In *Reed*,

5    the Court considered a municipal code that

6            "prohibit[ed] the display of outdoor signs without a permit, but exempt[ed] 23 categories

7            of signs, including three relevant [to the case].  'Ideological Signs,' defined as signs

8            'communicating a message or ideas' that [did] not fit in any other Sign Code category,

9            [could] be up to 20 square feet and ha[d] no placement or time restrictions.  'Political

10           Signs,' defined as signs 'designed to influence the outcome of an election,' [could] be

11           up to 32 square feet and [could] only be displayed during an election season. 'Temporary

12           Directional Signs,' defined as signs directing the public to a church or other 'qualifying

13           event,' ha[d] even greater restrictions: No more than four of the signs, limited to six

14           square feet, [could] be on a single property at any time, and signs [could] be displayed

15           no more than 12 hours before the "qualifying event" and 1 hour after.*  Id.* at *1.

16   The Court held that the ordinance was a content-based regulation of speech that could not survive strict

17   scrutiny.  See *id*. at *6 ("On its face, the Sign Code is a content-based regulation of speech. We thus

18   have no need to consider the government's justifications or purposes for enacting the Code to determine

19   whether it is subject to strict scrutiny").

20           *Reed* does not concern commercial speech, let alone bans on off-site billboards.  The fact that

21   *Reed* has no bearing on this case is abundantly clear from the fact that *Reed* does not even *cite Central*

22   *Hudson*, let alone apply it.   *Metromedia*, 453 U.S. at 511-14, and its progeny remain good law; the

23   City's sign ban is therefore not patently unconstitutional.

24           Plaintiffs also contend that the City is discriminating against them under the California

25   constitution.  To the extent plaintiffs maintain that this amounts to "bad faith" for purposes of *Younger*,

26   they are mistaken.  "Three factors that courts have considered in determining whether a prosecution is

27   commenced in bad faith or to harass are: (1) whether it was frivolous or undertaken with no reasonably

28   objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation

16

1   for the defendant's exercise of constitutional rights;  and (3) whether it was conducted in such a way as

2   to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and

3   oppressive use of multiple prosecutions."  *Phelps v. Hamilton*, 59 F.3d 1058, 1065 (10th Cir. 1995).

4   Focusing on "[t]hese factors [is] important because the cost, anxiety, and inconvenience of defending

5   against a single prosecution brought in good faith is not enough to establish the 'great and immediate'

6   threat of irreparable injury necessary to justify enjoining pending state proceedings." *Id.*

7          The complaint contains no allegations suggesting that any of these factors is present.  As noted,

8   off-site commercial sign bans have repeatedly and consistently been upheld as constitutional. Plaintiffs

9   are business entities that are not (and do not purport to be) members of a suspect class.  Finally, there

10  is no assertion that the City's conduct amounts to harassment or an abuse of prosecutorial discretion.

11  That there is no bad faith here is further reinforced by the fact that bans such as the one at issue here

12  have repeatedly been upheld as valid, and the state court has granted the City's application for

13  temporary restraining order and motion for a preliminary injunction restraining further violations of the

14  off-site sign ban.  See *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6 (1975) (explaining that a bad faith

15  prosecution "generally means that a prosecution has been brought without a reasonable expectation of

16  obtaining a valid conviction").  Moreover, the mere fact that plaintiffs assert an equal protection claim

17  does not preclude a finding that *Younger* abstention applies. See, e.g., *Pennzoil Co.*, 481 U.S. at 10-17

18  (district court should have abstained in action alleging due process and equal protection violations); *San*

19  *Remo Hotel v. City & Cnty. of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998) ("The amendment

20  of Field's complaint to state an  equal protection claim would have been futile because the district court

21  would have had to dismiss the claim under *Younger v. Harris*").  Plaintiffs therefore have failed to

22  demonstrate that any exceptions to *Younger* abstention apply.

23              **vi.     Conclusion Regarding *Younger* Abstention**

24          In sum, the court finds that the state court proceedings are ongoing, that they implicate important

25  state interests related to the enforcement of nuisance laws, and that they provide plaintiffs an adequate

26  opportunity to litigate their federal claims.  Furthermore, exercising jurisdiction over this case would

27  have the practical effect of enjoining the state court proceedings.  In addition, plaintiffs do not argue,

28  and the court does not conclude, that any of the *Younger* exceptions is applicable.  Thus, the court

17

1    concludes that it is appropriate to abstain under *Younger*.

2          The City requests that the court dismiss the action.  In *Gilbertson*, the Ninth Circuit held "that

3    *Younger* principles apply to actions at law as well as for injunctive or declaratory relief because a

4    determination that the federal plaintiff's constitutional rights have been violated would have the same

5    practical effect as a declaration or injunction on pending state proceedings." See 381 F.3d at 968.  The

6    court held, however, that "federal courts should not dismiss actions where damages are at issue; rather,

7    damages actions should be stayed until the state proceedings are completed." *Id.*; *ScripsAmerica*, 56

8    F.Supp.3d at 1143 ("in a case in which the plaintiff seeks damages, the court determines that the

9    *Younger* abstention is appropriate, it should stay the matter until the state court proceedings are

10    concluded, rather than dismissing the action"); *Nichols v. Brown*, 945 F.Supp.2d 1079, 1095 (C.D. Cal.

11    2013) ("While the *Younger* abstention doctrine requires dismissal where declaratory or injunctive relief

12    is sought, and a federal court should abstain from a damages claim where a necessary predicate of the

13    claim for damages undermines a necessary element in the pending state proceeding, the court should

14    stay, not dismiss, damages claims only 'until the state proceedings are completed'").

15          Plaintiffs seek declaratory and injunctive relief, as well as damages resulting from enforcement

16    of the City's off-site commercial billboard ban.  The court therefore cannot dismiss the action, but

17    instead must "stay its hand until state proceedings are completed." *Gilbertson*, 381 F.3d at 968;

18    *ScripsAmerica*, 56 F.Supp.3d at 1143 ("in a case in which the plaintiff seeks damages, [if] the court

19    determines that the *Younger* abstention is appropriate, it should stay the matter until the state court

20    proceedings are concluded, rather than dismissing the action"); *Ambat v. City & County of San*

21    *Francisco*, No. C 07 3622 SI, 2007 WL 3101323, *6 (N.D. Cal. Oct. 22, 2007) ("Here, because

22    *Younger* applies and plaintiffs seek damages along with injunctive relief, the Court stays the proceeding

23    pending resolution of the state court action").

24         **D.**    **Plaintiffs' Motion for Preliminary Injunction**

25          Given the court's conclusion that it must abstain under *Younger*, it "is required by law to deny

26    [p]laintiff[s'] motion for a preliminary injunction." *Carrick v. Santa Cruz Cnty.*, No. 12-CV-

27    3852 LHK, 2012 WL 6000308, *10 (N.D. Cal. Nov. 30, 2012); *Crayton v. Hedgpeth*, No. CV

28    08 00621 WHA (PR), 2009 WL 3379789, *2 (E.D. Cal. Oct. 19, 2009) ("Accordingly, absent some

allegation that any exception to *Younger* applies, this court defers to the superior court proceeding and denies plaintiff's motion for preliminary injunction.").  Plaintiffs' motion for preliminary injunction is therefore denied.

### III.  CONCLUSION

For the reasons stated, the court concludes that *Younger* abstention is warranted in this case. Accordingly, it stays plaintiffs' claims until the state court proceedings have concluded.  Because *Younger* abstention is appropriate, plaintiffs' motion for a preliminary injunction is denied.

The parties are directed to file joint briefs apprising the court of the status of the state court proceedings every ninety (90) days.

DATED: July 9, 2015

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE